IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-255-BO

| | | |
|---|---|---|
| GOLDEN CORRAL FRANCHISING | ) | |
| SYSTEMS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| GC OF VINELAND, LLC, WILLIAM J. | ) | |
| SCISM, and KAREN L. SCISM, | ) | |
| Defendants. | ) | |

This cause comes before the Court on defendants' motion to transfer venue. Plaintiff has responded, defendants have replied, and the matter is ripe for ruling. For the reasons that follow, defendants' motion is granted.

## BACKGROUND

Plaintiff, Golden Corral Franchising (Golden Corral or plaintiff), instituted this action by filing a complaint in this Court on June 20, 2019. Plaintiff alleges that defendants William and Karen Scism breached their franchise agreement with plaintiff to operate a Golden Corral restaurant in Vineland, New Jersey entered into in May 2007.[1] The franchise agreement provided for an initial term to expire October 31, 2026; defendants closed the Vineland restaurant in May 2018, and it has remained closed. Golden Corral alleges that due to the restaurant's closing, the Scisms have failed to pay plaintiff royalty fees equal to 4% of the gross sales of the restaurant as well as marketing fees, which represented 2.4% of gross sales at the time the Vineland restaurant closed, for the term of the franchise agreement. Plaintiff alleges

---

[1] In April 2011, the Scisms, with the consent of plaintiff, assigned their rights under the franchise agreement to defendant GC of Vineland, which was formed and controlled by the Scisms. For ease of reference, the Court will refer to defendants as either defendants or the Scisms.

that this amounts to a material breach of the franchise agreement and seeks compensatory damages and attorney fees.

In May 2018, BankUnited N.A. brought an action against the Scisms in New Jersey state court based on the Scisms' alleged default of a commercial loan assigned to BankUnited. The Scisms the filed a third party complaint against Golden Corral Corporation, Golden Corral Franchising Systems, Inc., and First Chatham Bank. First Chatham Bank removed the action to the United States District Court for the District of New Jersey on August 16, 2018. In their amended third party complaint, the Scisms allege claims against the Golden Corral defendants for, *inter alia*, wrongful conduct and breach of the franchise agreement, and contend that such breach led to the litigation brought by BankUnited against the Scisms. The Scisms further allege that Golden Corral and Golden Corral Corporation breached the New Jersey Franchise Practices Act. The Golden Corral defendants moved to dismiss the third party complaint, and on December 4, 2019, the District of New Jersey court dismissed all but the Scisms' breach of franchise agreement and violation of the New Jersey Franchise Practices Act claims.

The Scisms filed their motion to transfer this case to the District of New Jersey on December 30, 2019. On January 29, 2020, the Golden Corral defendants moved in the District of New Jersey to sever the third party claims and transfer them to this district. *Bank United, NA v. GC of Vineland*, No. 2:18-CV-12879 (D.N.J. Jan. 29, 2020). The Scisms have opposed the motion to transfer their third party claims to this district, and that motion is currently pending before the district court in New Jersey.

## DISCUSSION

A court may transfer venue in a civil action to any district or division in which the action might have been brought for the convenience of parties and witnesses and in the interest of

2

justice. 28 U.S.C. § 1404(a). "An order allowing transfer of a matter to another district is committed to the discretion of the district court." *In re Ralston Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984). A transferor court may consider numerous factors, including the plaintiff's choice of forum, witness convenience and access, the convenience of the parties, where the events occurred that gave rise to the action, and enforceability of judgment, in determining whether transfer is appropriate. *See Collins v. Straight Inc.*, 748 F.2d 916, 921 (4th Cir. 1984); *Nutrition & Fitness, Inc. v. Blue Stuff, Inc.*, 264 F.Supp. 2d 357, 362 (W.D.N.C. 2003).[2] As a court considers such factors, it is mindful that the ultimate decision of whether transfer is appropriate is not reached by cataloguing the weighted result of each factor, but rather is within the "art of judging." *Datasouth Computer Corp. v. Three Dimensional Technologies, Inc.*, 719 F.Supp. 446, 451 (W.D.N.C. 1989) (citation omitted).

This circuit has also recognized the "first-filed" rule, *see Learning Network, Inc. v. Discovery Comm., Inc.*, 11 F. App' x 297, 300 (4th Cir. 2001); *Nutrition & Fitness*, 264 F.Supp. 2d at 360, which provides a presumption of priority in parallel litigation in the venue where jurisdiction is first established. *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993); *see also VRCompliance LLC v. HomeAway, Inc.*, 715 F.3d 570, 574 (4th Cir. 2013) (where parallel suits pending in state and federal court, first filed should

---

The list of factors generally consider includes: "1) the plaintiff's choice of forum, 2) the residence of the parties, 3) access to evidence, 4) the availability of compulsory process for witnesses and the costs of transporting and obtaining those witnesses, 5) the possibility of a view by the jury, 6) the enforceability of a judgment, 7) the relative advantages and obstacles to a fair trial, 8) practical issues affecting trial expediency and efficiency, 9) the relative court congestion between the districts, 10) the interest of resolving localized controversies at home and the appropriateness of having the trial of a diversity case in a forum that is at home with the state law that must govern the action, and 11) the avoidance of conflict of laws." *Nutrition & Fitness*, 264 F. Supp. 2d at 362.

generally have priority). The first suit is given priority "absent showing of a balance of convenience in favor of the second." *Learning Network*, 11 F. App'x at 300.

The Scisms' third party complaint was plainly the first filed action which alleged claims arising out of their franchise agreement with Golden Corral. The Scisms and Golden Corral are all parties to the New Jersey action; although there are additional parties in the New Jersey action, the parties need not be perfectly identical in order for the first-filed rule to apply. *Troche v. Bimbo Foods Bakeries Distribution, Inc.*, No. 3:11CV234-RJC-DSC, 2011 WL 3565054, at *3 (W.D.N.C. Aug. 12, 2011) (listing cases). The claims in both this suit and the third party suit arise from the franchisee relationship between the Scisms and Golden Corral and are governed by the same franchise agreement. The first-filed rule thus supports transfer of this action to the District of New Jersey. *See Nutrition & Fitness*, 264 F.Supp. 2d at 360.

The balance of convenience, which addresses factors similar to those considered under § 1404(a), also weighs in favor of transfer. *See US Airways, Inc. v. US Airline Pilots Ass'n*, No. 3:11-CV-371-RJC-DCK, 2011 WL 3627698, at *3 (W.D.N.C. Aug. 17, 2011).

The plaintiff's choice of forum is generally given great deference. Further, a forum selection clause should be "a significant factor that figures centrally in the district court's calculus" as to whether to grant a motion to transfer under § 1404(a). *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Golden Corral relies primarily on the forum selection clause in the franchise agreement to oppose transfer. The franchise agreement provides that suits against Golden Corral shall be filed in the federal district court covering the location at which the Golden Corral has its principal place of business at the time of the commencement of suit. *See* [DE 1] Compl. Ex. A. Suits brought by Golden Corral may be brought in that district, or

elsewhere. *Id.* Golden Corral's principal place of business is in Raleigh, North Carolina, which is located in the Eastern District of North Carolina.

The forum selection clause applicable to the Scisms as franchisees, an apparently mandatory provision, would be entitled to more weight were it not for the circumstances present in this case. The Scisms did not elect to file a suit against Golden Corral on their own in the New Jersey courts. Rather, their complaint against Golden Corral was filed as a third party complaint after BankUnited filed suit against them in New Jersey state court. Importantly, New Jersey applies the entire controversy doctrine, which is

> a rule of mandatory joinder, [and] which gives rise to a species of claim preclusion unknown outside New Jersey. The doctrine requires the joinder of all claims and parties, whenever possible, in a single action and frequently operates in unpredictable ways to bar subsequent actions by parties who have failed to observe the doctrine in a prior litigation.

*Hulmes v. Honda Motor Co.*, 924 F. Supp. 673, 676 (D.N.J. 1996). It would appear, then, that defendants risked preclusion if they had failed to bring their franchise-related claims in the New Jersey action. Additionally, New Jersey considers forum selection clauses in franchise agreements subject to the New Jersey Franchise Act "presumptively invalid because they fundamentally conflict with the basic legislative objectives of protecting franchisees from the superior bargaining power of franchisors and providing swift and effective judicial relief against franchisors that violate the Act." *Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc.*, 146 N.J. 176, 193 (1996). The presence of the Scisms' Franchise Act claim in the District of New Jersey, which must apply New Jersey law when determining the enforceability of the forum-selection clause, cuts against a finding that the mandatory venue provision in the franchise agreement should be given great or considerable weight here.

To the extent it must consider the private convenience factors in determining the balance of convenience in light of the first-filed rule and the presence of the forum selection clause, *see Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64 (2013), in a contract dispute such as this, access to evidence and witnesses will be required in both the franchisee and the franchisor's residence, here New Jersey and North Carolina, and this private convenience factor is thus neutral. *See Hardee's Food Sys., Inc. v. Rosenblatt*, 44 F. Supp. 2d 767, 771 (E.D.N.C. 1998) (where evidence and witnesses are in separate venues, the convenience factors weigh in favor of neither side). The alleged breach, however, took place in New Jersey and the physical location of the restaurant is in New Jersey. As concerns the local interest factor, "Courts have determined that litigation should take place in the federal judicial district or division with the closest relationship to the operative events." *Speed Trac Techs., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 804 (M.D.N.C. 2008).

Golden Corral has been litigating the related action in New Jersey for more than year and has cited no impediment to its being able to continue to do so. As they were named as defendants by BankUnited in the New Jersey action, there is no suggestion of forum shopping by the Scisms by filing first in New Jersey in order to gain an improper advantage. Although Golden Corral contends that the Scisms' third party claims against it were raised in bad faith and are unrelated to BankUnited suit, the third party complaint has been tested by a motion to dismiss and the court has allowed the claims arising out of the franchise agreement to proceed. There is nothing particular or exceptional about North Carolina contract law which would suggest that the District of New Jersey court would be any less able to apply it than this Court. *Atl. Marine Const. Co.*, 571 U.S. at 67. The Court agrees with defendants that the case load statistics for this district and the District of New Jersey court do not counsel against transfer.

6

[DE 23 at 9]; https://www.uscourts.gov/statistics-reports/analysis-reports/federal-court-management-statistics. Finally, there is judicial economy in allowing the District of New Jersey, which has already entered a substantive order on the motion to dismiss, to continue to exercise its jurisdiction over the claims arising out of this franchise agreement.

At bottom, the first-filed rule is applicable and no exception to the rule, including forum shopping or bad faith, warrants its disregard. Nor does the balance of convenience counsel against application of the first-filed rule. Defendants have satisfied their burden and transfer of this action to the District of New Jersey is appropriate.

## CONCLUSION

For the foregoing reasons, defendants' motion to transfer [DE 20] is GRANTED. The Clerk of Court is DIRECTED to transfer this action to the United States District Court for the District of New Jersey, Newark Vicinage.

SO ORDERED, this _17_ day of March, 2020.

_Terence Boyle_
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE